IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY d/b/a
ECONOMY PREMIER ASSURANCE COMPANY                    PLAINTIFF

VS                                    CIVIL ACTION NO. 2:09cv016KS-MTP

CLAYCO CONSTRUCTION GROUP, LLC                       DEFENDANT

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment [Doc. #53] (November 5, 2009) and memorandum in support [Doc. #54] filed by Defendant Clayco Construction Group, LLC ("Clayco"). The Motion is opposed by Plaintiff Metropolitan Property and Casualty Insurance Company d/b/a Economy Premier Assurance Company ("MetLife") [Docs. #62 & 63]. The court, having reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the summary judgment motion should be denied. The court specifically finds as follows:

### I. BACKGROUND

Early in the evening on December 15, 2005, the Hattiesburg home of Dr. and Mrs. R.H. Clark caught fire. Compl. ¶ 5. Earlier that day, Clayco's workers were replacing the cedar shake shingle roof. Compl. ¶ 7. The fire caused significant damage to the structure and contents of the home, and caused the Clarks to incur additional living expenses. Compl. ¶¶ 11-12. MetLife paid the Clarks $686,422.67 under the terms of their insurance policy. Compl. ¶¶ 13-14. MetLife, as subrogee, now claims that Clayco is liable for this entire amount because the

1

fire was a result of its own and its employees' negligence. Compl. ¶ 15.

MetLife, relying heavily on circumstantial evidence, theorizes that the workers were smoking cigarettes on the roof, and that a spark from a cigarette left among the combustible moss, debris, and loose cedar shingles started the roof fire. First, MetLife relies on a timeline formed from statements of eyewitnesses, the time of the 911 call to the Hattiesburg Fire Department, and the sounding of the internal heat sensing fire alarm located in the attic. Pl.'s Resp. Mot. Summ. J. ¶¶ 4-6 [Doc. # 62]. Based on the timeline, MetLife theorizes that the fire started approximately 30 minutes after the roofers left the property. Pl.'s Resp. Mot. Summ. J. ¶ 20. MetLife also concludes that since flames were spotted before the heat sensor alarm in the attic sounded, the fire started on the roof and not in the attic.

Additionally, the last employees to leave the roof were the two employees known to be smokers. Pl.'s Resp. Mot. Summ. J. ¶¶ 26-29. The day of the fire, the roofers were not using any tools or equipment with sparks or open flame. Clayco denies that the workers smoked on the roof, but MetLife points to initial statements made in 2005 by the crew's supervisor, Jason Todd, to a cause and origin expert indicating that the workers did sometimes smoke on the roof. Pl.'s Resp. Mot. Summ. J. ¶ 29. Unfortunately, the two smokers that were working on the Clarks' home the day of the fire could not be found during the discovery process for deposition. Pl.'s Resp. Mot. Summ. J. ¶ 30.

MetLife also relies on the opinion of its cause and origin expert, Michael Dulaney. Using the scientific method provided for in N.F.P.A. 921 (2004 Ed.), Dulaney, by eliminating other potential causes of the fire, determined the fire was caused by a human factor. Pl.'s Resp. Mot. Summ. J. ¶ 20. He relied in part on the evidence above and in part on the report of Dr. Ray

Franco, an electrical engineer, who eliminated all electrical causes of the fire after his inspection of the premises on December 20, 2005. Pl.'s Resp. Mot. Summ. J. ¶ 10; Pl.'s Resp. Mot. Exclude Expert Testimony ¶ 10 [Doc. # 64] .

In support of its summary judgment motion, Clayco contends that MetLife has no competent evidence that Clayco breached a duty or caused the fire. Def.'s Memo. Br. Supp. Mot. Summ. J. 1-2 [Doc. # 54]. Clayco argues that Delaney's methods fails to satisfy the standards set forth by Federal Rule of Evidence 702 and the cases interpreting the rule, like *Daubert,* and should therefore be excluded. In conjunction with the motion for summary judgment, Clayco filed a motion to exclude Dulaney's testimony [Doc. # 52] which this court denied. Clayco also relies on the opinion of its own cause and origin expert, Norman Presson, to show that the evidence is more consistent with a fire that began in the attic and not on the roof. The Court has denied MetLife's motion to exclude his testimony under Federal Rule 702 as well. [Doc. # 50].

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence

and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which

highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut by bringing forward "'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Mun. Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982)*; Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e); s*ee also Union Planters Nat'l Leasing*, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court," *Topalian* 954 F.2d at 1137, "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention– the court must consider both before granting a summary judgment." *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Prop., Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

### III.  LAW AND APPLICATION

In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "A plaintiff in a negligence suit must prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4) injury." *Patterson v. Liberty Assoc's, L.P.*, 910 So.2d 1014, 1019(¶ 14) (Miss. 2004) (citing *Miss. Dep't of Transp. v. Cargile*, 847 So.2d 258, 262(¶ 11) (Miss. 2003)); see also *Sellars ex rel. Dill v. Walgreen Co.*, 971 So.2d 1278, 1279 (Miss.App.2008) (to overcome summary

judgment, Plaintiff must show a genuine issue regarding each of the four elements of negligence). "It is elementary law that in any lawsuit based upon negligence, it is incumbent upon the plaintiff to first prove by a preponderance of the evidence that the defendant was negligent and that such negligence was a proximate cause of the accident." *Rudd v. Montgomery Elevator Co.*, 618 So.2d 68, 73 (Miss. 1993) (citations omitted).

"Under well-established Mississippi law, negligence may be proved by circumstantial evidence, provided that the circumstances are sufficient to take the case 'out of the realm of conjecture and place it within the field of legitimate inference.'" *Thomas v. Great Atlantic and Pacific Tea Co., Inc.*, 233 F.3d 326, 329-330 (5th Cir. 2000) (quoting *K-Mart Corp. v. Hardy*, 735 So.2d 975, 981 (Miss. 1999)). "If proof of causation is to be established circumstantially, the evidence must be sufficient to make the plaintiff's asserted theory *probable,* not merely *possible;* and it is usually for the trier of fact to say whether the proffered circumstantial evidence meets this test." *Id.* at 330 (citing *Leflore County v. Givens*, 754 So.2d 1223, 1230 (Miss. 2000)). To avoid summary judgment, the plaintiff must present "enough circumstantial evidence to take her claims out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference.'" *Id.* (citing *Snapp v. Harrison*, 699 So.2d 567, 570 (Miss. 1997)). Further, the evidence presented by the non-movant to withstand summary judgment must be admissible. *See ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995).

Clayco's argument that MetLife has no evidence to support causation in its negligence claim is insufficient to dismiss the claims because of Dulaney's expert testimony. In his opinion, Dulaney, following the methods in N.F.P.A. 921 and after excluding other possible causes

including electrical, determined that the fire's cause was probably a human factor. While this conclusion is founded on circumstantial evidence and inference, his exclusion of other possible causes moved his opinion "out of the realm of conjecture."

Nor is the court swayed by Clayco's spoilation argument that because the windings from the electrical attic vent fan were missing, it is entitled to a presumption that this evidence was unfavorable to MetLife and this component was the true cause of the fire. "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). The windings were examined and photographed by Presson, Clayco's cause and origin expert. Although it may not have been preserved as evidence, there is no evidence that the component was destroyed intentionally by MetLife or that MetLife was even responsible for its disappearance. Therefore, MetLife has presented "significant probative evidence" that there is a triable issue of fact regarding causation.

Clayco's next argument is that MetLife has no evidence that its actions were the "human factor" that caused the fire, or, more specifically, that it breached its duty by allowing its employees to smoke on the roof. MetLife may not rely on the doctrine of *res ipsa loquitur* to meet its burden. *Res ipsa* creates a rebuttable presumption of negligence when three elements are met:

> 1) the instumentality causing the damage must be under the exclusive control of the defendant,
> 2) the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care, and
> 3) the occurrence must not be due to any voluntary act on the part of the plaintiff.

*Coleman v. Rice*, 706 So.2d 696, 698 (Miss. 1997). When these elements are all met, a jury "*may*, but *is not bound to*, infer negligence on the part of the defendant." *Read v. Southern Pine Elec. Power Ass'n*, 515 So.2d 916, 920 (Miss. 1987). The *res ipsa* doctrine should be cautiously applied. *See Clark v. Vardaman Mfg. Co.*, 162 So.2d 857, 858 (Miss. 1964). Here, MetLife fails to meet the first two elements. First, it has not been established what caused the fire, and therefore Clayco cannot be found to be in exclusive control over the instrumentality causing the damage. Nor was the roof under the exclusive control of Clayco at the time of the fire. At the time when the fire was first discovered, Clayco's crew had been off the property for approximately thirty minutes. In the thirty minutes between the crew leaving the site and the fire being detected, someone else could have had access to the property. Secondly, a house fire, while not an ordinary event, could happen in the absence of negligence by Clayco. This seems obvious considering both parties hired experts to consider and eliminate other possible causes. Res ipsa requires proof that the occurrence "would not happen" if the party used proper care, and MetLife has not met this burden. Therefore the res ipsa doctrine will not preclude summary judgment in favor of Clayco.

However, MetLife has presented enough probative evidence that Clayco breached its duty to avoid summary judgment. First, Dulaney contends that Jason Todd, the roofing crew's supervisor, shortly after the fire and during the course of his investigation, told him that the workers smoked on the roof. Pl.'s Resp. 10 [Doc. # 62]; See also Dulaney Aff. ¶ 3 [Doc. #63-2]. Clayco, in its brief in support of summary judgment, claims that Todd's later deposition testimony that he never saw anyone smoking is uncontradicted because the statement to Dulaney was hearsay and MetLife has not produced anyone with personal knowledge of smoking on the

8

roof. Def.'s Memo. 5 n.1 [Doc. # 54]. Given the information presently before the Court, the statement to Dulaney may very well be admissible under the Federal Rules of Evidence. Under Federal Rule 801, a statement is not hearsay if it is an admission by a party-opponent, which includes when "the statement is made against a party" and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2)(D).

Here, Todd was tasked by Clayco to oversee the crew as they replaced the Clarks' roof. Surely one of his jobs in overseeing the crew would be to ensure that the crew members were not smoking on the roof, particularly since he testified that the homeowners had specifically requested that the workers not smoke on the roof or leave cigarette butts on the ground. Todd Depo. 34:23-35:20. Therefore, the matter at issue, whether the crew members were smoking on the roof, is likely a matter within the scope of Todd's employment as crew supervisor. The alleged admission was made days after the fire to the insurance company's cause and origin investigator. Presumably, since Todd was at the scene of the fire when Dulaney questioned him, he was still an employee of Clayco, indicating that the statement was made during the existence of the employment relationship.[1] Therefore, the prior inconsistent statement made by Todd to Dulaney will likely be admissible as an admission and provides sufficient evidence to avoid summary judgment.

In addition to Todd's initial statement, MetLife presents other circumstantial evidence that the human factor that caused the roof fire was careless smokers. First, MetLife relies on

---

[1] Eric Clayton, Clayco's owner, also stated that Todd and the two employees that were known to smoke returned to the Clarks' home after the fire to complete the job of putting new shingles on the roof. Clayton Depo. 8:17-23 [Doc. # 62-6].

9

Dulaney's determination that the fire started on the roof and was caused by a human factor. To prove that this human factor was Clayco's careless smokers, MetLife relies on several factors. First, the two workers who were known smokers were the last workers on the roof and no one else was known to be on the roof between the roofers leaving and the fire department responding. Pl.'s Resp. ¶¶ 24-27. Secondly, no other tools or devices with open flames or capable of causing a spark were used on the roof that day. Pl.'s Resp. ¶ 38. Third, the fire was reported to the Hattiesburg Fire Department within thirty minutes of the roofers' departure, and open flames usually develop within fifteen to ninety minutes after a cigarette is applied to flammable material. Pl.'s Resp. ¶¶ 19-20. Finally, in 2005 the N.F.P.A. documented around 20,000 structure fires caused by cigarettes. Pl.'s Resp. ¶ 21. Clayco argues that MetLife's argument is an example of impermissible deduction of *post hoc, ergo propter hoc*– after this, therefore because of this. *See Foster v. United States*, 214 F.Supp. 181, 183-84 (S.D. Miss. 1963) ("*Post hoc, ergo propter hoc* (After this, therefore, on account of it- the fallacy of arguing from mere temporal sequence to cause and effect relationship) is not good as evidence or convincing as argument in Mississippi." (citing *Jackson v. Swinney*, 140 So.2d 555, 557 (Miss. 1962); *Kramer Serv., Inc. v. Wilkins*, 186 So. 625 (Miss. 1939))).

      The Defendant is correct– evidence that the workers were on the roof before the fire, and therefore must be the cause of the fire would, alone, be an impermissible inference. But MetLife has presented evidence not only that the workers were there (and could possibly be the cause) but also that the workers, who were not using any other equipment requiring flames or sparks, were known to smoke, that the fire was consistent with what investigators know about fires started by cigarettes, and that, according to Todd's prior statement to Dulaney, the roofers were

indeed smoking on the roof. MetLife's argument relies on more than just a temporal relationship between the workers being present and the start of the fire. Importantly, the Plaintiff does not have to prove its case to a preponderance of the evidence in response to a summary judgment motion– rather it must show enough evidence to create a reasonable inference and demonstrate a triable issue of fact. The Court holds that MetLife has met its burden on demonstrating a triable issue of fact on whether Clayco breached its duty and has survived dismissal on summary judgment.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [Doc. # 53] filed on behalf of the defendants is hereby denied.

SO ORDERED AND ADJUDGED this the 22nd day of December, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE