IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY d/b/a
ECONOMY PREMIER ASSURANCE COMPANY                         PLAINTIFF

VS                                      CIVIL ACTION NO. 2:09cv016KS-MTP

CLAYCO CONSTRUCTION GROUP, LLC                            DEFENDANT

## AMENDED MEMORANDUM OPINION AND ORDER

This cause is before the Court on a motion to exclude testimony of Plaintiff's expert witness [Doc. #52] (November 5, 2009), filed by Defendant Clayco Construction Group, LLC ("Clayco"). Clayco seeks the exclusion of the opinion testimony of Michael Dulaney. For reasons set forth below, the motion should be **denied**.

Also before the Court is a motion to exclude testimony of Defendant's expert witness [Doc. # 50] (November 5, 2009), filed by Plaintiff Metropolitan Property and Casualty Insurance Company ("MetLife"). MetLife seeks the exclusion of the opinion testimony of Norman Presson. For reasons to follow, the motion should be **denied.**

## I. FACTUAL BACKGROUND

Early in the evening on December 15, 2005, the Hattiesburg home of Dr. and Mrs. R.H. Clark caught fire. Compl. ¶ 5. Earlier on the day of the fire, Clayco's workers were replacing the cedar shake shingle roof. Compl. ¶ 7. The fire caused significant damage to the structure and contents of the home, and caused the Clarks to incur additional living expenses. Compl. ¶¶

1

11-12. MetLife paid the Clarks $686,422.67 under the terms of their insurance policy. Compl. ¶¶ 13-14. MetLife, as subrogee, now claims that Clayco is liable for this entire amount because the fire was a result of its own and its employees' negligence. Compl. ¶ 15.

MetLife theorizes that the workers were smoking cigarettes on the roof, and that fire or a spark from a cigarette left among the combustible moss, debris, and loose cedar shingles started the roof fire. In support of its careless smoking theory, MetLife presents the testimony of a cause and origin expert, Michael Dulaney. Clayco has filed a motion to exclude this testimony for several reasons. First, Clayco challenges the relevancy of the opinion as not sufficiently grounded in the facts of the case because Dulaney's opinion relies on the false idea that the workers were smoking when all the available evidence indicates that they were not. Def.'s Memo. Br. Supp. Mot. Exclude Expert 5-6 [Doc. # 54]. Second, Clayco challenges Dulaney's reliability because he did not discard his theory after his experimental attempts to recreate a fire using cedar shingles and a cigarette failed. Def.'s Memo. 7. Clayco argues that the failure to discard his theory and start over is a deviation from the requirements of National Fire Protection Association 921 Guide for Fire and Explosion Investigation ("N.F.P.A. 921"). Def.'s Memo. 13. Similarly, he challenges his methodology of eliminating other potential causes of the fire without having a clearly defined area of origin. Def.'s Rebuttal Memo. 11-12 [Doc. # 75]. Third, Clayco argues that Dulaney failed to conduct a fuel load test to determine what amount of fire burning on the roof would be required to burn through the plywood decking and drop the fire into the attic which was also damaged in the fire. Def.'s Memo. 10. Finally, Clayco argues that Dulaney's theory is inconsistent with *Kirk's Fire Investigation*, an authoritative text on the subject of cause and origin, that distinguishes the characteristics of a roof fire from that of an

attic fire. Def.'s Rebuttal Memo. 7-10 (citing John D. DeHaan, KIRK'S FIRE INVESTIGATION (Marlene McHugh Pratt, ed., Pearson Education, Inc. 2007)).

Clayco claims that the fire's origin was the attic, although they are unable to determine the cause. In support of its argument, Clayco presents the testimony of its own cause and origin expert, Norman Presson. MetLife has filed a motion to exclude his testimony as unreliable because Presson failed to follow the methodology provided for by N.F.P.A. 921. MetLife argues that Presson, aware that he was being hired by a roofing company, failed to consider the roof as a possible origin, in contradiction of N.F.P.A. 921 §17.5, which requires a detailed analysis of the exterior of the building even if the fire's origin is clearly the interior of the building. Pl.'s Mot. Exclude Expert Testimony ¶¶ 8, 14 [Doc. # 50]. Specifically, MetLife alleges that Presson failed to access the roof by ladder, take photographs of the roof other than pictures of the blue tarpaulins covering the roof, or attempt to identify potential ignition sources on the roof. Pl.'s Mot. ¶ 17. MetLife also argues that Presson's testimony is not relevant because his opinion of the origin of the fire is not sufficiently tied to the facts of the case. Specifically, MetLife contends that Presson's theory is not relevant because he failed to complete a thorough investigation into the conditions of the roof, and his theory is therefore not based on sufficient facts. Pl.'s Memo. Br. Supp. Mot. Exclude Expert Testimony 7-8 [Doc. # 51].

## II. STANDARD OF REVIEW

Federal Rule of Evidence 702, amended post-*Daubert* in 2000, provides that a witness "qualified as an expert … may testify … in the form of an opinion … if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the

3

case." *See generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). "*Daubert* . . . assigned the trial court a gatekeeper role to ensure such testimony is both reliable and relevant." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

"Many factors bear on the inquiry into the reliability of scientific and other expert testimony. In *Daubert*, the Supreme Court offered an illustrative, but not an exhaustive, list of factors that district courts may use in evaluating the reliability of expert testimony." *Id.* These factors include:

> (1) whether the expert's theory can be or has been tested;
>
> (2) whether the theory has been subject to peer review and publication;
>
> (3) the known or potential rate of error of a technique or theory when applied;
>
> (4) the existence and maintenance of standards and controls; and
>
> (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (en banc). Subsequently, in *Kumho Tire Co.*, the Supreme Court noted that the *Daubert* analysis is "flexible," and that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." 526 U.S. at 150. The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at

4

152.

"Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "[T]he trial court's role . . . is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Nonetheless, "[t]he proponent of expert testimony . . . has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), and must establish the admissibility requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

### III. APPLICATION AND ANALYSIS

The methodology set forth by N.F.P.A. 921 has been well recognized as an accepted methodology under Federal Rule of Evidence 702 for determining cause and origin of fires. *Butcher v. Allstate Ins. Co.*, No. 2:06cv229KS-MTP, 2009 WL 301822 at *3 (S.D. Miss. Feb. 5,

2009); *Cole's Tool Works v. American Power Conversion Corp.*, No. 2:06cv169-P-A, 2009 WL 1298236 at *2 (N.D. Miss. May 07, 2009). "A typical fire . . . investigation may include all or some of the following: a scene inspection or review of previous scene documentation done by others; scene documentation through photography or diagramming; evidence recognition, documentation, and preservation; witness interviews; review and analysis of the investigations of others,; and identification and collection of data or information from other appropriate sources." N.F.P.A. 921 § 4.4.3.1. However, not all fire investigations will require the application of all the techniques or investigatory steps outlined. § 1.3.3. The standards also allow for a credible determination to be formed through a process of elimination. § 18.2.1. N.F.P.A. 921 recognizes that often the source of the ignition is destroyed by the fire and that in those circumstances, the source can only be inferred. § 18.3.1. Any hypothesis that is formed should be tested against the known facts, either cognitively or experimentally. § 4.3.6.

Both experts contend that they followed the methodology in N.F.P.A. 921 in coming to their conclusions. However, both parties contest whether the other's application of the methodology to the facts at hand in developing their hypotheses was reliable. In the pending motions, Clayco seeks to exclude the testimony of Michael Dulaney, and MetLife seeks to exclude the testimony of Norman Presson. The Court will evaluate the proposed testimony of each witness in turn.

### A. Plaintiff's Expert: Michael Dulaney

Dulaney has been conducting fire investigations for approximately twenty years. Pl.'s Mot. Exclude Expert Testimony, Ex. A [Doc. # 50-2]. Dulaney's report indicates that he considered physical evidence personally observed at the fire scene and documented in

photographs, Dr. Ray Franco's electrical evaluation, eyewitness reports, the Hattiesburg Fire Department Incident Report, and his interview of Clayco's crew foreman, Jason Todd, in reaching his hypothesis of the cause and origin of the fire. Although, he initially determined that the fire most likely started in the attic, he revised this hypothesis after Dr. Franco, an electrical engineer, eliminated the likelihood of an electrical problem in the attic. Dulaney, through the process of elimination determined that "the original ignition source required a human factor." Ex. A at 4 [Doc. # 50-2].

Clayco's contention that a careless smoker theory is contrary to all the evidence that the employees were not smoking on the roof is not sufficient grounds to exclude the testimony of Dulaney. Dulaney eliminated other possible sources before determining that the fire was caused by a human factor as instructed by N.F.P.A. 921. In his interview with Todd, the roofing crew supervisor, Dulaney was told that the crew did not use power tools or torches on the roof that day and that members of his crew do smoke cigarettes on the roof. Ex. A at 3 [Doc. # 50-2]. Having considered the evidence available to him, Dulaney concluded that the fire originated at roof level, not in the attic, and was caused by a human factor.

Clayco argues that Dulaney's reliance on Todd's alleged statements are unfounded because Todd said later in his deposition that he was sure that the roofers did not smoke on the roof. Def.'s Memo. 5-6 [Doc. # 54]. However, Rule 702 is designed to test the reliability of experts' methods and relevant experiences, not the strength or weakness of their conclusions. "The original reliance on the incorrect facts goes to the weight of his testimony not the admissibility of the testimony itself." *Voth v. State Farm Fire and Cas. Ins. Co.*, No. 07-4393, 2009 WL 411459 at *6 (E.D. La. Feb. 17, 2009). Federal Rule of Evidence 703 allows experts

7

to rely on facts or data "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and provides that the opinion or inference is admissible even though the facts or data relied on are inadmissible. N.F.P.A. 921 specifically allows witness interviews and "identification and collection of data or information from other appropriate sources." § 4.4.3.1. Dulaney was doing just that by interviewing the crew's supervisor to determine if lit cigarettes were present on the roof that day. That Dulaney may have relied on false information goes to the credibility of testimony and should be determined by the jury.

Nor does Dulaney's inability to reproduce the fire in an experiment or failure to conduct a load test experiment to determine how much of a roof fire will burn through the plywood decking merit exclusion of his testimony. N.F.P.A. 921 does not require a re-enactment of the fire to determine the cause, but states clearly that cognitive testing of hypotheses is sufficient. § 4.3.6.

Lastly, Clayco's argument that Dulaney's conclusion is inconsistent with the conclusion that would be reached following the characteristics in *Kirk's Fire Investigation* treatise goes to the credibility of the conclusion, and not the methodology. The credibility of an expert's conclusions is for the jury to determine.

### B. Defendant's Expert: Norman Presson

Presson is a fire investigator with over fifteen years of experience in the field. Pl.'s Mot. Exclude Expert Testimony, Ex. A at 8-9 [Doc. # 50-3]. After inspecting and photographing the fire loss, interviewing Dr. and Mrs. Clark and the Hattiesburg Fire Investigator Clayton Speed, and consulting Dr. John Owens, an electrical engineer, Presson concluded that the fire originated

8

in the attic and that the ignition source was undetermined, but was "possibly electrical in nature." Ex. A at 4.

Presson's alleged failure to properly consider the roof in his origin analysis is not sufficient grounds to support MetLife's contentions that his testimony is both unreliable and irrelevant. MetLife argues that Presson's investigation was deficient because he did not access the roof by ladder or observe the roof under the tarpaulins, despite knowledge that he had been hired by a roofing company that had been working on that home the day of the fire and that Clayco's employees were known to smoke. Presson explains that he was unable to go on the roof in the course of his investigation because the roof was not structurally sound. He further contends that he was able to see enough of the roof from within the house looking up through the fire damaged roof to exclude the roof as the origin of the fire. N.F.P.A. 921 recognizes that not all fire investigations are alike and that not all of the techniques or investigatory steps outlined in the N.F.P.A. are necessary for all fires. § 1.3.3. Therefore, Presson's methods sufficiently considered the roof for purposes of avoiding the exclusion of his testimony.

## IV. CONCLUSION

For the reasons given above, the Court finds that both parties have presented highly qualified cause and origin experts who followed the methodology recommended by N.F.P.A. 921. Both parties have sufficiently applied the methods to the facts known to them. The Court recognizes that both parties will have grounds for vigorous cross-examination of the other's witness, but these challenges go to the credibility of the experts' opinions and are left to the jury. Therefore, both Michael Dulaney and Norman Presson's testimonies are reliable and relevant to

the case at hand and will be admitted at trial.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Clayco's motion to exclude testimony of Plaintiff's expert witness [Doc. #52] is **denied.**

IT IS, FURTHERMORE, ORDERED AND ADJUDGED that the MetLife's motion to exclude testimony of Defendant's expert witness [Doc. #50] is **denied.**

SO ORDERED AND ADJUDGED on this, the 14th day of January, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE